*Charles Adams,* attorney for the defendant.

------

CHARLES ADAMS, defendant below, *vs.* ANDREW ELLIS, plaintiff below.

In error, it is necessary that the record contain such a statement of the matters complained of, as that nothing is left to conjecture.

A judgment of the County Court must be presumed to be right, unless the record show it to have been erroneous, and will be affirmed, on error, if the bill of exceptions is so loosely drawn up, as to leave the matter in doubt; notwithstanding it furnish some reason to believe that error might have intervened

*Chittenden,*
*December,*
*1825.*

ON the trial below, in which there was a verdict and judgment for the plaintiff there, the defendant filed the following bill of exceptions:

Ellis *vs.* Adams. Chittenden County Court, February Term, 1824.

This was an action of trover in the common form, for an iron bound waggon.

To prove the declaration, the plaintiff offered Paul Varney, who swore, that in September, 18.9, he sold and delivered to the plaintiff, for 25 dollars, a waggon not ironed, and afterwards agreed with the plaintiff to get it ironed for him; that he engaged the defendant to iron it at the defendant's shop, and told him the waggon belonged to Ellis. That the defendant did iron the waggon, and charged it to the witness, who charged it to the plaintiff. Price of ironing, 34 dollars.

Also, George Robinson, who swore that he had a demand for collection in favor of Jonathan Bosworth, against a son of the

*Chittenden,*
*December,*
*1825.*

*Adams*
*vs.*
*Ellis.*

plaintiff, and took the plaintiff's note for the same, payable in a waggon; that Ellis informed him he had a waggon at the defendant's shop for him; that he called on the defendant, who told him that Ellis had a waggon at the defendant's shop, which, being ironed in a particular manner, was worth only sixty dollars.

The plaintiff then read the following deposition, " I Jonathan Bosworth, of Berlin, in the county of Washington, of lawful age, testify and say, that on or about the 15th of February, 1821, I went to Mr. Robinson's, at Burlington, for a waggon which he was to receive for me, of a Mr. Ellis of Colchester. Mr. Robinson being absent, I applied to Charles Adams, who I understood, was to iron the waggon, and inquired for a waggon which Mr. Robinson had there from Mr. Ellis. Mr. Adams informed me there had been a waggon there which Robinson and Mr. Ellis were concerned in; but he knew nothing about it; or there was none there then; or to that effect. If Mr. Robinson wanted a waggon, his order would be good.

(Signed)     "JONATHAN BOSWORTH."

The plaintiff then introduced Peter Sharp, who swore that in the spring of 1822, and a few days before the commencement of the plaintiff's action, he went with the plaintiff to the defendant's office, where the plaintiff demanded the waggon. The defendant told the plaintiff that he knew nothing about his waggon, and cared nothing about it.

The defendant proved that the waggon was ironed in the fall of 1819, and remained about his shop until the spring of 1821. That said waggon, with a number of others, on the 9th of April, 1821, was attached at the suit of John Abbott *vs.* the defendant; and was, by the attaching officer, put into the possession of Matthew Rice, near the defendant's house, where it has ever since remained.

The Court charged the jury, that, if the defendant did not object to the authority of Bosworth at the time he called for the waggon, he could not now dispute it.

To which the defendant excepted; and his exceptions were allowed. Whereupon this writ of error was brought, in which the following errors were assigned :

1. It appears by the proceedings aforesaid, that the County Court admitted the deposition of Jonathan Bosworth to be read to the jury, as evidence of a demand for said waggon, without its being shown that said Bosworth had any authority from said Ellis to make any demand: whereas, by the laws of this state, said deposition ought to have been rejected.

2. It appears that said waggon has not been converted by said Charles; but that the same is where said Andrew can claim and receive it when he will.

3. It also appears, that said Charles Adams requested said County Court to charge the jury, that, unless they found that Bosworth was authorized by said Ellis to demand said wag-

*Chittenden,*
*December,*
*1825.*

*Adams*
*vs.*
*Ellis.*

gon, they must find for the defendant; but that said Court charged the jury that, if the defendant did not *object to the* authority of Bosworth, at the time he called for the waggon, he could not then dispute it. Whereas, said Court should have instructed the jury, that any demand by Bosworth was insufficient, unless he was .properly authorized by Ellis.

4. The common error.

*Allen,* for the plaintiff in error. There was no conversion in fact. The waggon being taken by the officer as Adams' property, was no conversion by Adams. Ellis could call on the officer for the waggon, or demand compensation, as he pleased; or, he could have taken the waggon from Mr. Rice's shop, where it now is.

There was no demand and refusal. The testimony of Bosworth was not sufficient to show any demand. He called on Adams for the purpose of making inquiry after the waggon, but did not make any demand, nor request to have it delivered to him.

The Court erred in charging the jury, that, if the defendant did not dispute Bosworth's authority at the time, he could not dispute it on trial.

Bosworth did not pretend to have any authority, and it would have been idle to have disputed it. He inquired for a waggon, which Mr. Robinson had; and was answered, that Mr. Robinson's order was good. He pretended to no authority from any one, much less from Ellis, whom, it would seem, he had not seen.

*Thompson,* for the defendant in error. It appears from the bill of exceptions, that the waggon remained in Adams' possession from the fall of 1819, until April 9, 1821, when it was attached as his property; that Bosworth called for it February 15, 1821, and was told, that there had been a waggon there, in which Robinson and Ellis were concerned, but that it was not there then; or, that he (Adams) knew nothing about it. That Ellis called for it in the spring of 1822, and was told by Adams that he cared nothing, and knew nothing, about it; and that Adams knew by Robinson for what purpose it had been left. From these facts, the defendant in error contends, that the plaintiff has converted the property.

1. If, when Bosworth called for the waggon, Adams doubted his authority, it was his duty to have informed him, that Bosworth might have an opportunity of satisfying him upon the subject; for as long as his authority was not questioned, he would, of course, presume that it was not doubted; and while a different reason was given for not delivering the property, would not deem it necessary to prove his authority. It therefore follows, as a necessary inference, that if the authority of the person demanding, is not denied at the time of making the demand, it is admitted, and can never afterwards be questioned.—2 *Esp.* *Dig.* 203.

2. The reason given for not delivering property when demanded, (if any is given,) is the only one upon which the person refusing can afterwards rely in his defence; and if he make any misrepresentation, or false declaration, by which the owner is misled or deceived, it is, in law, a conversion. Adams having ironed the waggon in the fall of 1819, and had it in his possession, in or about his shop, from that time until April, 1821, must be presumed to have known where it was when Bosworth called for it, in February, 1821; and declaring at that time, and under such circumstances, that there was no waggon there, or, that he knew nothing about it, he was guilty of a conversion.— 1 *Esp. N. P. C.* 83.   2 *Esp. Dig.* 204.   2 *John's Cases,* 411.

3. The waggon having been attached as Adams' property, by virtue of a writ against himself, and left by the officer near his shop and house, and having remained there, and these facts proved by his own witnesses, he must necessarily have known the situation of it. And when Ellis called for it in the spring of 1822, (if not before,) was bound to inform him on the subject. Declaring, therefore, at that time, that he knew nothing, nor cared nothing about it, and refusing to give it up, or give any information concerning it, amounted to a conversion, if it had not already been converted. His negligence in not informing the officer who made the attachment, that the waggon was not his, was a conversion.—6 *Jac. L. D.* 311.   2 *Esp. Dig.* 204. 5 *Burr.* 2827.

The judgment of the Court was pronounced by

HUTCHINSON, J. The plaintiff in error complains of errors in the judgment of the County Court, as described in his writ of error. It seems that exception was taken to the charge of the Court. And, to cause that to appear of record, a bill of exceptions was drawn, which recites certain testimony and depositions, and what the charge of the Court was, as to one particular at least; but does not aver, that what is recited was the whole testimony in the cause, nor alledge what points were litigated on trial; nor whether there was any request to the Court concerning their charge to the jury. The Court find some reason to suspect, that the charge of the County Court was defective, not giving all the instruction to the jury, the defendant had a right to expect. But we cannot reverse the judgment of the County Court upon conjecture. Enough should appear in the exceptions and case, to show their decision to be wrong,* or it must be presumed to be right. Enough does not appear in this case to show the judgment wrong. The judgment of this Court, therefore, is, that the judgment of the County Court be affirmed, with six per cent. interest upon the damages, with additional costs.

*Heman Allen* and *Chs. Adams,* for the plaintiffs in error.

*J. C. Thompson,* for the defendant in error.

*Chittenden,*
*December,*
*1825.*

*Adams*
*vs.*
*Ellis.*

* Acc. Dodge *vs.* Billings. 2 D. Chip. R. 26.